**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARIO VICTOR ORDUNA-SOLORZANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:20-cv-1464-MTS |
| ) | |
| KILOLO KIJAKAZI, A*cting Commissioner of* ) | |
| *the Social Security Administration*, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the acting

Commissioner of Social Security, denying the application of Mario Victor Orduna-Solorzano

("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42

U.S.C. §§ 401–434 (the "Act").

## I.  Procedural History

On January 29, 2018, Plaintiff filed an application for DIB under the Act with an alleged

onset date of December 21, 2017.  (Tr. 144–45).  After Plaintiff's application was denied on initial

consideration, he requested a hearing from an Administrative Law Judge ("ALJ").  (Tr. 74–76).

Plaintiff and his counsel appeared for an in-person hearing before the ALJ on September 23, 2019.

(Tr. 25–51).  Brenda G. Young, an impartial vocational expert, also appeared at the hearing.  In a

decision dated November 21, 2019, the ALJ concluded Plaintiff was not disabled under the Act.

(Tr. 11–20).  The Appeals Council denied Plaintiff's request for review on August 12, 2020.  (Tr.

1–4).  Accordingly, the ALJ's decision stands as the Commissioner's final decision.[1]

---

[1] Section 1383(c)(3) of the Act provides for judicial review of the SSA Commissioner's "final decision."

II.   **Evidence Before The ALJ**

   **A.  Overview and Function Report**

   Plaintiff was born on March 6, 1967, and alleged disability beginning December 21, 2017, at age 50.  (Tr. 144).  In a February 2018 Disability Report, Plaintiff alleged disability due to a back injury, pain in his legs, and sleep apnea.  (Tr. 239).

   In a March 2018 Function Report, Plaintiff reported a back injury from a 2010 vehicle accident when a semi-truck rear ended him.  (Tr. 270).  The accident also worsened a previous back injury.  After the accident, Plaintiff reported being immobile for eight months and wearing a chest brace for six months.  Since then, Plaintiff explained he could not carry anything heavier than 20 pounds and only for a few minutes and that currently, he could only carry 10 pounds.  He also reported the inability to stand, walk, or sit for long periods of time because of pain, as well as difficulty moving his arms.  Plaintiff reported pain caused him difficulty shopping, working, or participating in any event.

   Plaintiff described his typical day.  (Tr. 271).  According to Plaintiff, he wakes up and takes pain medication to ease his pain.  He drives his child to school, then goes back home to his second floor apartment to do chores such as fixing the bed, quick cooking, washing dishes, and picking up mail from downstairs.  After finishing chores, Plaintiff reports he must take more pain medication.  Plaintiff reported he can also do laundry, fold clothes, take out the trash, drive, pay bills, handle finances, walk outside, watch TV, read books, socialize, use a computer, and paint or draw.  (Tr. 272–74, 279).  Plaintiff also reported going to bible study, baseball games, and organized activities on a regular basis.  (Tr. 274).  Plaintiff reported grocery shopping about once a week but when the shopping takes more than 20 minutes, he must go rest somewhere.  Plaintiff reported no problem with personal hygiene but that dressing, bathing, and shaving is difficult

because of his back, leg, and arm pain.  (Tr. 271).  Plaintiff stated that his pain medications impair his short term memory, and he needs reminders for his other medication and doctor appointments. (Tr. 272).  Plaintiff stated his hobbies have become difficult due to physical challenges.  (Tr. 274). For example, arm pain makes painting problematic, and reading is difficult due to his lack of concentration from medication.  Plaintiff stated his impairments also affect lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, using his hands, memory, concentration, and completing tasks.  (Tr. 275).  He indicated that his ability to pay attention and follow instructions depends on whether he has taken his pain medication.  (Tr. 275).  Plaintiff listed side effects from all four of his medications—gabapentin for restless leg syndrome, hydrocodone for pain, mesylate for his prostate, and doxazosin for high blood pressure—which include drowsiness and dizziness from pain medication.  (Tr. 276–77).  He had injections for his knee but not his back.

### B.  Medical Evidence

The relevant time period for consideration of Plaintiff's claim is from December 21, 2017, the alleged onset date.  Plaintiff initially applied for disability due to back injury, pain in his legs, and sleep apnea.  (Tr. 239).

Dr. Daniel Berg, Plaintiff's long-term primary care physician, has treated Plaintiff's back and knee pain for many years.  Plaintiff told Dr. Berg he gets severe back pain when he works too many hours and also that he experiences knee pain.  (Tr. 396).  Dr. Berg prescribed hydrocodone for pain.  (Tr. 398, 859, 862, 868).  He advised Plaintiff to take more hydrocodone if his pain is severe and Plaintiff reported doing so when working.  Dr. Berg ordered imaging.  (Tr. 865).

On June 28, 2018, Dr. Yasuo Ishida evaluated Plaintiff for back pain that radiated into his upper thighs.  (Tr. 423–26).  Plaintiff reported he could sit and stand for just five minutes and

3

"maybe" walk a block.  He reported that stairs are difficult, he is unable to squat, and can bend some.  Dr. Ishida noted Plaintiff's range of motion of the hips and knees were decreased and his range of flexion in the back was limited.  Dr. Ishida also noted tenderness in the hip, knees, thighs, groin, and midline from the neck down to the lumbar area.  Dr. Ishida observed Plaintiff take small steps and limp around the examining room but noted Plaintiff had no problem moving around the room and getting on and off the examination table.  Dr. Ishida's clinical impression was back pain and bilateral thigh and knee pain.  X-rays of the thoracic spine showed Plaintiff's status post anterior compression fracture at T10 with anterior bony fusion at T9 to T11.  (Tr. 419, 425).  X-rays of the lumbar spine showed degenerative joint disease at L5-S1.  (Tr. 417).  X-rays of the left knee showed slight medial compartment narrowing, with no hypertropic spur formation, no angular deformity, no fractures, and no bone destruction.  (Tr. 418, 425).

A January 2019 MRI of the thoracic spine showed a moderately severe chronic compression fracture of T10 with mild to moderate neuroforaminal stenosis at T10-11 and mild chronic compression fractures of T3 and T4.  (Tr. 835).  Another MRI showed mild degenerative changes of the lumbar spine.  (Tr. 832).  A February 2019 MRI of the left knee showed moderate patellofemoral and mild lateral compartment chondrosis with a small left knee effusion.  (Tr. 839).  Left knee meniscal and cruciate ligaments were intact.

In February 2019, Plaintiff saw orthopedic knee specialist Dr. Robert Brophy for evaluation of the left knee.  (Tr. 801–02).  Plaintiff reported left knee pain after being kicked by a horse many years ago, with intermittent symptoms ever since, but worsening in the last six years.  Plaintiff reported pain, swelling, and some feeling of giving way or locking.  Plaintiff reported no improvement after a prolonged course of anti-inflammatories.  Plaintiff reported worse pain with kneeling and squatting, while staying off the knee improved pain.  Dr. Brophy reviewed imaging

and noted no fracture.   X-rays and MRI showed mild degenerative changes and revealed osteoarthritis.[2]   (Tr. 809, 843–84).   In March 2019, Dr. Brophy gave Plaintiff cortisone injections/aspirations for pain relief.  (Tr. 811).  In May 2019, Plaintiff reported that his exercise status was limited by back and knee pain, but he was able to do two flights of steps without stopping, although he did not do so very often, and was able to walk short distances.  (Tr. 619).  In July 2019, Plaintiff opted for therapy and a prescription NSAID rather than another injection in his knee.  (Tr. 823).  In August 2019, Plaintiff underwent another injection in his knee.  (Tr. 827).

In June 2019, Plaintiff presented to Dr. Ronak Patel for evaluation and treatment of back pain.  (Tr. 542).  Treatment notes indicate Plaintiff had a history of a non-operatively treated T-10 burst fracture after a motor vehicle collision in 2010.   Since the accident, Plaintiff reported worsening pain.  Plaintiff reported pain located in the middle of his back and sometimes radiating up and down.  He also reported developing some low back pain over the last several years, which Plaintiff attributed to a horse kicking him in the back.  The low-back pain bothered him mostly at nighttime and was associated with some radiating pain going down the left posterior thigh.  Plaintiff explained that if he stood for too long, he felt numbness in the anterior thigh bilaterally; sitting down and lying down helped, but he was unable to do so for a prolonged period.  Plaintiff denied any further injuries.  Subsequent x-rays of the thoracic and lumbar spine showed no changes from the previous MRIs.  (Tr. 520).  Dr. Patel characterized the MRI findings as "mild at best." (Tr. 546).  He noted Plaintiff's symptoms were not consistent and overlapped with his thoracic back pain.

Dr. Patel explained to Plaintiff that his thoracic back pain was largely related to his posture. (Tr. 546).  Plaintiff said he found himself leaning forward, especially when doing heavy work.

---

[2] Imagining also revealed a mass in Plaintiff's left knee, but doctors opined that the mass was unrelated to his symptoms and later surgically removed the mass.  (Tr. 809).

Plaintiff reported trouble keeping jobs because of continued pain but, at that time, was currently working as a driver four to six hours per day.  Plaintiff previously tried physical therapy, which he stated did help with pain, but he was not consistent about it.  Plaintiff wanted to attempt another course of physical therapy to see if it would alleviate pain.  Dr. Patel recommended physical therapy for his low back pain and radiculopathy, and if Plaintiff did not respond to therapy, Dr. Patel would consider doing a left S1 selective nerve root block.  Dr. Patel did not recommend surgical intervention in the absence of continued deformity or progressive neurologic weakness.

In September 2019, Dr. John Stivers saw Plaintiff for evaluation of his left S1 radiculopathy and meralgia paresthetica bilateral.  (Tr. 883–84).  Plaintiff reported bilateral anterior thigh numbness and tingling pain, as well as radiating pain in his left buttock that travels down his left and posterior thigh.  Treatment notes indicate Plaintiff was seen several months ago and given a referral for physical therapy, which Plaintiff had just started the week before his current appointment.  He completed just one therapy session.  Plaintiff reported still taking hydrocodone prescribed by Dr. Berg.  Plaintiff wanted to complete physical therapy before further treatment.  Dr. Stivers noted the MRI indicated no significant central stenosis with mild stenosis at the left S1 neural foramen; though this imagining did not, in his opinion, completely "correlate with the severity of [Plaintiff's] symptoms."

**C.  Medical Opinions**

1.  ***Dr. Berg***

In November 2017, Dr. Berg, Plaintiff's primary care physician for over 10 years, issued a letter explaining Plaintiff experienced exacerbations of his symptoms due to standing for prolonged periods of time and would have improved health if he had a job where he could sit down intermittently.  (Tr. 399).  In September 2019, Dr. Berg issued a second letter stating that, in his

6

opinion, Plaintiff was disabled due to chronic back pain caused by a thoracic vertebra fracture in a motor vehicle accident in 2010.  (Tr. 446).  Dr. Berg further stated that this was surgically repaired; that Plaintiff had chronic pain and decreased ability to sit, stand, or stay in one position for prolonged periods of time; and that he completed physical therapy without significant improvement.  Dr. Berg stated Plaintiff suffered from other problems including S1 radiculopathy, sleep apnea, and chronic knee pain.

2. ***Dr. Duff***

In August 2018, Dr. John Duff, a state agency medical consultant, concluded that Plaintiff was capable of performing light work, with additional limitations.  (Tr. 58–63).  He opined Plaintiff could stand, walk, and sit for a total of six hours in an eight-hour workday.  Dr. Duff found Plaintiff had postural limitations such as occasionally climbing, balancing, stooping, kneeling, crouching, and crawling.  He also found Plaintiff had manipulative limitations such as limited reaching and handling but was able to carry 20 pounds occasionally and 10 pounds frequently.

**D.  Hearing Testimony**

Plaintiff appeared and testified before the ALJ on September 23, 2019.  (Tr. 25–51). Plaintiff testified that a serious motor vehicle accident in 2010 injured his back, and a kick by a racehorse injured his knee.  Due to a combination of his back and knee injuries, Plaintiff alleges that he cannot sit, stand, or walk for long and has to mix a combination of the three.  Plaintiff testified that he could sit for 15 minutes at a time before he needed to get up, stand for 10 minutes before pain and numbness in his thighs, and walk for 10 minutes before he needed to sit and rest. Plaintiff explained he needed to constantly change positions and could not lift more than 10 pounds.  Plaintiff also stated he needed to lie down on a flat surface twice a day for 15 minutes to relieve his back pain. Plaintiff takes hydrocodone for pain and in general, four different types of

medication, which Plaintiff stated all have negative side effects.  He had injections for his knee but not his back.

Since the 2010 accident, Plaintiff explained that he has only worked part-time because his conditions render him unable to work full-time.  He testified that he currently works for a temporary service 12 to 16 hours per week, selecting jobs that he thinks he can handle physically. Plaintiff currently drives for car auctions in his temporary job, which involves some walking and some driving, and works about four hours a day.  He described the job: he picks up a car, drives it to a potential buyer for them to view, then drives it back and gets another car, and repeat.  Plaintiff explained that he experiences discomfort driving due to the position of the back and seat and feels that 20 minutes of driving was too much for him.  Plaintiff stated he cannot drive on his pain medication because it made him drowsy and dizzy and affected his concentration and focus. Plaintiff further stated that his lower back and knee injury limit his ability to work longer hours for the temporary agency.  Plaintiff previously worked as a self-employed interpreter working for the substance abuse arm of the St. Louis Department of Health.  Plaintiff testified that he could not work 40 hours a week nor be able to sit all the time if working as an interpreter.

Brenda Young, an impartial vocational expert, also testified at the hearing.  (Tr. 47–50). She explained that an interpreter job is classified as sedentary with a skill rating of SVP 7.  Ms. Young testified that, in her opinion, work as an interpreter would be eliminated if an individual was off-task approximately 10-percent of the time.  Ms. Young testified that if Plaintiff required a sit/stand option every 30 minutes, he could work as an interpreter.  When asked about a 15-minute option, she testified that a sit/stand option every 15 minutes "could have an effect just in terms of an interruption of the . . . process but."  She also stated other jobs exist in the national economy that would accommodate a 15-minute sit/stand option and Plaintiff's other limitations.

8

**III.**   **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that he is disabled under the Social Security Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); 20 C.F.R. §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Pate-Fires*, 564 F.3d at 942; *see also* 20 C.F.R. § 416.920(e). At this point, the ALJ assesses the claimant's residual functional capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793. At Step 4, the ALJ must determine whether the claimant can return to his past relevant work

9

by comparing the RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f).  If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled.  *Id.*

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision).  The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence

in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp."  *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## IV.    The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above.  At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity since December 21, 2017, the alleged onset date.  (Tr. 13).  At Step 2, the ALJ found Plaintiff had severe impairments of thoracic compression fracture, degenerative disc disease, degenerative joint disease, osteoporosis, and obesity.  (Tr. 13–14).  At Step 3, however, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met or medically equaled a statutorily recognized impairment.  (Tr. 15).  The ALJ determined Plaintiff retained the RFC to perform the full range of "sedentary" work with postural and environmental limitations.  (Tr. 15–19).  He required the option to sit/stand every 30 minutes throughout the eight-hour workday while remaining on task.  Plaintiff is unable to climb ladders, ropes, or scaffolds, and crawl, but he can occasionally climb ramps or stairs, stoop, kneel, and crouch.  He must avoid exposure to extreme vibration, all operational control of moving machinery, working at unprotected heights, and using hazardous machinery.  At Step 4, the ALJ found Plaintiff able to perform his past relevant work as an interpreter.  (Tr. 19).  Accordingly, because Plaintiff retained the RFC to perform his past relevant work as an interpreter, the ALJ concluded Plaintiff is not disabled.  (Tr. 19–20).

## V.    Discussion

Two specific issues exist between the parties in this case: (1) whether the ALJ properly considered Plaintiff's subjective complaints and (2) whether the RFC is supported by substantial evidence.

11

1. ***The ALJ Properly Evaluated Plaintiff's Symptoms***

Plaintiff argues the ALJ improperly discounted Plaintiff's subjective complaints,[3] which the ALJ must consider when determining a claimant's RFC. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). The ALJ may discount complaints if they are inconsistent with the evidence as a whole. *Chaney v. Colvin*, 812 F.3d 672, 677–78 (8th Cir. 2016); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence."); *see also* 20 C.F.R. § 404.1529(c)(4) (considering "any inconsistencies in the evidence" when evaluating symptoms). When analyzing a claimant's credibility, the ALJ considers various factors pertaining to (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529. However, the "ALJ need not explicitly discuss each factor." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (explaining the ALJ is "not required to discuss methodically each *Polaski*" factor). A claimant's work history and the absence of objective medical evidence to support the claimant's complaints are also relevant. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). When rejecting a claimant's subjective complaints, the ALJ "must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). The Court defers to the ALJ's credibility determination if it is supported by good reasons and substantial evidence. *Bryant v. Colvin*, 861 F.3d 779, 782–83 (8th Cir. 2017).

Plaintiff argues the ALJ did not make an express credibility finding and failed to discuss most of the *Polaski* factors. However, the ALJ *did* make an express credibility finding. The ALJ

---

[3] Plaintiff argues that if the ALJ properly considered Plaintiff's pain, he would not be able to perform as an interpreter. (Tr. 388).

found Plaintiff had severe impairments that caused some pain and limitations but determined his subjective complaints were not fully credible and limiting as alleged.  Further, the ALJ made this determination based on several factors including (1) Plaintiff's work history, (2) effectiveness and nature of Plaintiff's medication and treatment, (3) lack of objective medical evidence, and (4) Plaintiff's own statements relating to his functional limitations.

First, the ALJ noted that Plaintiff has worked and continues to work despite alleging work-preclusive impairments.  "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff*, 421 F.3d at 792 (affirming ALJ credibility analysis based on work history).  The ALJ discussed evidence of Plaintiff's work history *prior* to his alleged onset date.  In *Goff*, the Eight Circuit considered the fact that a claimant worked for over three years after strokes and the lack of evidence showing any deterioration in her condition as proper evidence to discount the claimant's credibility.  *Id.* at 792–93.  Similarly, here, the ALJ noted that despite Plaintiff's 2010 automobile accident, Plaintiff has been able to perform work for many years in spite of it.  Thus, the ALJ properly considered Plaintiff's longitudinal work activity in the context of being inconsistent with his claim that injuries dating back to an accident in 2010 progressed to the point of disablement seven years later.  *Id.*; *see also* 20 C.F.R. § 404.1529(c)(4) (considering "any conflicts between your statements and the rest of the evidence" including the claimant's "history"); *see also id.* § 404.1529(c)(3) (considering claimant's "prior work record" when evaluating symptoms).  The ALJ also looked at Plaintiff's work history throughout Plaintiff's claimed period of disability.  The ALJ noted Plaintiff worked as a part-time driver *after* his December 2017 alleged onset date.  Not only is this evidence inconsistent with disability, see *Goff*, 421 F.3d at 792, but the nature of the job further diminishes Plaintiff's credibility.  As the ALJ discusses, Plaintiff's allegations of being able to only sit/stand for five minutes is inconsistent with driving vehicles,

13

which inherently requires more than five minutes of sitting.  *See Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (finding similar evidence of work as a bus driver, which required claimant to sit for hours, inconsistent with disabling pain).

Second, the ALJ discussed Plaintiff's treatment.  The ALJ properly discussed the effectiveness and conservative nature of Plaintiff's medical treatment, such as opioids for pain relief and physical therapy, when discounting his complaints.[4]  *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding conservative treatment weighs against credibility); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (noting an ALJ may consider a plaintiff's conservative course of treatment as indicative that his symptoms are not disabling); *Chamberlain v. Shalala*, 47 F.3d 1489, 1495 (8th Cir. 1995) (failing to seek aggressive medical care is not suggestive of disabling pain); 20 C.F.R. § 404.1529(c)(3)(v) (explaining the ALJ considers the claimant's "treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms" when evaluating symptoms); *Id.* at § 404.1529(c)(3)(iv) (explaining the ALJ considers the effectiveness of medication when evaluating claimant's symptoms).  The ALJ also cited Plaintiff's choice to defer treatment for certain symptoms and for certain periods of time. *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (evaluating credibility with evidence of claimant's failure to obtain treatment for certain symptoms and for certain periods of time).

Third, the ALJ noted the lack of objective medical evidence to corroborate Plaintiff's subjective symptoms.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) ("[L]ack of objective medical evidence is a factor an ALJ may consider."); 20 C.F.R. § 404.1529(c)(2)

---

[4] Plaintiff also argues the ALJ failed to discuss the side effects of the medication in the RFC.  However, Plaintiff does not point to any evidence to support these symptoms other than his own allegations.  As the Court discussed in the Opinion, the ALJ engaged in a proper credibility analysis and then "properly limited [the] RFC determination to only the impairments and limitations [the ALJ] found credible based on [] evaluation of the entire record."  *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); *see also Goff*, 421 F.3d at 793 (explaining the RFC is based on all "credible evidence").  As such, the ALJ is not required to include in the RFC Plaintiff's complaints of side effects.

14

(considering objective medical evidence in evaluating intensity and persistence of symptoms). Specifically, the ALJ pointed to statements from two of Plaintiff's treating physicians in which they could not correlate Plaintiff's objective medical findings, such as MRIs, to his complaints of pain. Dr. Stivers stated that a 2019 MRI "does not completely correlate with the severity of his symptoms." (Tr. 883). Dr. Patel stated that Plaintiff's MRI findings are "mild at best" and his "symptoms are not consistent and overlapped with his thoracic back pain." (Tr. 546). The ALJ properly discussed the MRI evidence and the objective evidence's failure to support Plaintiff's claims of symptoms and severity when analyzing his credibility. *Medhaug*, 578 F.3d at 816 (considering evidence of repeated MRI studies failure to support claimant's allegations of deterioration in functional abilities weighs against credibility). Furthermore, Dr. Duff, the State agency consultative physician, reviewed the available evidence in August 2018, and found that Plaintiff's alleged limitations were not consistent with medical evidence. The ALJ properly considered Dr. Duff's opinion when evaluating Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529(b) (considering the opinion of a medical expert concerning whether the claimant's impairments could "reasonably be expected to produce" the alleged symptoms).

Finally, the ALJ considered Plaintiff's own statements of functional limitations when evaluating his credibility. *See* 20 C.F.R. § 404.1529(4) (considering a claimant's own statements about the intensity, persistence, and limiting effects of symptoms). As an example, the ALJ noted that Plaintiff told his doctor that he can climb two flights of stairs, though he does not do it often. The ALJ noted the "fact that he is able to [claim stairs] at all suggests his back and knee pain are not nearly as limiting as he alleges." (Tr. 18). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

15

In  conclusion, the Court finds the ALJ adequately, if not expressly, applied the *Polaski* factors and other factors, and sufficiently considered Plaintiff's complaints of disabling pain and symptoms but expressly discredited them for good cause because they were inconsistent with the evidence as a whole.  *Chaney*, 812 F.3d at 677–78 (allowing the ALJ to discount complaints inconsistent with the evidence as a whole).  Accordingly, substantial evidence supports the ALJ's determination to discount Plaintiff's subjective complaints.  *Bryant*, 861 F.3d at 782–83.

### 2.   *The ALJ's RFC Finding is Supported by Substantial Evidence*

First, Plaintiff argues that the RFC finding requiring a sit/stand option *every 30 minutes* is not supported by substantial evidence.  There is no dispute that the ALJ properly included a sit/stand option in the RFC.  However, Plaintiff argues that no medical professional stated the specific interval (*i.e.*: 30 minutes) necessary for Plaintiff's sit/stand limitation and instead, the record evidence supports a 15- to 20-minute interval, which Plaintiff suggests would preclude work as an interpreter.  The Court agrees with the former.

Plaintiff's treating physician, Dr. Berg, opined that Plaintiff requires a sit/stand option and the ALJ expressly noted Dr. Berg's opinion was "persuasive."  However, Dr. Berg did not indicate a specific interval that could be sustained; only that the ability to sit/stand was necessary.  No other medical evidence suggests an interval, and although Plaintiff's subjective complaints support a lesser interval, the ALJ engaged in a proper credibility analysis, as discussed *supra*, and thus, properly found a 15- to 20-minute interval not warranted here.  *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003) (explaining the ALJ "properly limited [the] RFC determination to only the impairments and limitations [the ALJ] found credible based on [] evaluation of the entire record"); *see also Goff*, 421 F.3d at 793 (explaining the RFC is based on all "credible evidence").  However, the ALJ cannot "play doctor," meaning that the ALJ cannot "substitute a doctor's

opinion for his own." *Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020).  Because Dr. Berg's opinion is silent on a specific interval, and no other record evidence mentions or supports an interval (besides evidence the ALJ properly discounted), the ALJ was required to "seek additional clarifying statements" from Dr. Berg because the "crucial issue" of the sit/stand interval was undeveloped.  *Goff*, 421 F.3d at 791.  Because the ALJ failed to seek clarification and instead, substituted its own opinion to determine a 30-minute sit/stand option, the ALJ erred.

Nevertheless, the Court finds the ALJ's error does not warrant remand here.  The ALJ's failure to support the 30-minute interval with substantial evidence is not a basis for reversal here because the ALJ found Plaintiff capable of performing his past relevant work, regardless of the interval.  *See Douglas v. Barnhart*, 130 F. App'x 57, 59–60 (8th Cir. 2005) (finding error, but not reversing, when ALJ failed to include a sit-stand option in RFC because the ALJ found the claimant capable of performing her past relevant work as a customer-service representative, and this was work that the claimant herself described as including a sit-stand option); *see also Moad v. Massanari*, 260 F.3d 887, 891 (8th Cir. 2001) (finding claimant not disabled if she could perform actual functional demands and duties of specific past relevant job).

The 30-minute sit/stand limitation in the RFC is phrased in the same way the ALJ phrased the limitation when asking the vocational expert ("VE") whether a person with Plaintiff's limitations would be able to perform as an interpreter.  At the hearing, the VE specifically testified that if Plaintiff required a sit/stand option every 30 minutes, he could perform his past work as an interpreter.  Even when asked about a 15-minute option, the VE only testified that a 15-minute interval "*could* have an effect just in terms of an interruption of the . . . process."  (Tr. 49–50) (emphasis added).  Neither the ALJ nor Plaintiff's counsel requested clarification as to the scope of the 15-minute limitation, and the VE did not seek to elaborate on her statement.  In fact,

Plaintiff's counsel failed to seek clarification or further explanation of what the VE's statement meant in terms of Plaintiff's ability to perform work as an interpreter, even when the ALJ explicitly asked Plaintiff's counsel if he had any questions for the VE. (Tr. 50). "The lack of confusion during the administrative hearing suggests that all parties understood the parameters of the proposed limitation." *Earnest v. Colvin*, No. 4:14-cv-00615-NKL, 2015 WL 1964819, at *6 (W.D. Mo. Apr. 30, 2015). As such, the Court does not find a *potential* "interruption" synonymous with Plaintiff's inability to work as an interpreter.

Despite this testimony, Plaintiff argues the interpreter job would *not* accommodate Plaintiff's alleged need to sit/stand every 15 to 20 minutes. Yet, Plaintiff points to no evidence that this lesser interval would preclude him from performing work as an interpreter. *Goff*, 421 F.3d at 790 ("A disability claimant has the burden to establish her RFC."). If the Court were to accept Plaintiff's proposition as true, a dangerous precedent would be created, one where the claimant can argue that any limitation—specifically one unsupported by record evidence and properly found non-credible by the ALJ—prevents him from working. Regardless, the record supports the fact that a 15-minute interval does not preclude Plaintiff from working. While it is true the VE stated that a sit/stand option every 15 minutes would cause some "interruption," the VE's testimony does "not suggest that such a need *would* inhibit a worker's ability to perform their job" as an interpreter. *Earnest*, No. 2015 WL 1964819 at *6 (affirming on similar grounds). Further, the VE testified that a 15-minute sit/stand option would *still* also allow Plaintiff to work other jobs in the national economy, such as a cashier. (Tr. 49–50). "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000).

Next, Plaintiff argues the RFC is not based on substantial evidence because the medical opinion by Dr. Duff—a one-time, non-examining doctor—cannot be said to constitute substantial evidence upon which the RFC can be based.  Indeed, courts do not consider the opinions of non-examining, consulting physicians standing alone to be substantial evidence.  *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999).  Here, however, the ALJ did not rely solely on Dr. Duff's opinion to reach its conclusions, but rather viewed the opinion as one part of the record, which provides substantial support for the ALJ's findings.  *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) (allowing ALJ reliance on a "non-examining consulting physician" because the ALJ did not rely "solely" on the report and viewed the opinion as "one part of the record").

Plaintiff further protests the inadequacy of Dr. Duff's opinion arguing the opinion was completed almost a year prior to the ALJ hearing.  However, this argument is without merit for two reasons.  First, Dr. Duff assessed Plaintiff's limitations in August 2018, which was almost nine months *after* the onset of Plaintiff's alleged disability; thus, the opinion is based on evidence well within the period at issue.  Second, the ALJ specifically noted that despite Dr. Duff's opinion, the ALJ considered *later* medical records, ones that were not available to Dr. Duff at the time of his August 2018 opinion.  Based on such *later* medical evidence (post-August 2018) the ALJ imposed a lesser level of work—sedentary work instead of light work—and imposed more limitations—a sit/stand option—than Dr. Duff opined in August 2018.  As an example, the ALJ considered and found Dr. Berg's *later* opinion persuasive as to sedentary work limitations with a sit/stand option and other limitations on climbing and exposure to environmental hazards, all reflected in the RFC.[5]  Thus, the ALJ properly relied on Dr. Duff's medical opinion when

---

[5] Plaintiff argues that the ALJ did not explain its basis for including some of the limitations included in the RFC, such as avoiding extreme vibration, control of moving machinery, unprotected heights and hazardous machinery. The Eighth Circuit has made clear the courts will not set aside an administrative finding based on an "arguable deficiency in opinion-writing technique" when it is unlikely it affected the outcome. *Strongson v. Barnhart*, 361 F.3d 1066, 1072

determining Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(a)(3) (considering evidence in RFC assessment); 404.1527 (evaluating opinion evidence), 404.1513a (evaluating evidence from Federal or State agency medical or psychological consultants).

Consistent with Dr. Berg and Dr. Duff's medical opinions, as well as other record evidence, including Plaintiff's testimony and statements, the nature and effectiveness of Plaintiff's medical treatment, and medical findings and observations, the ALJ properly limited Plaintiff to "sedentary work," which is defined in part, as a job where "walking and standing are required occasionally." 20 C.F.R. § 404.1567(a).  Thus, the RFC is based on substantial evidence.  *Goff*, 421 F.3d at 793 (explaining a RFC is based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations).

<u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 18th day of February 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

(8th Cir. 2004) (quoting *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)).  Accordingly, the Court considered Plaintiff's argument and finds it without merit.